Case 24-1157, Eastern District of Arkansas, Gavonna Willis v. Juanita Mills All right. For the appellant, Mr. Wren. Yes, Your Honor. You may proceed. May it please the Court, my name is Keith Wren. I am here on behalf of Officer Juanita Mills of the West Helena, Arkansas Police Department. This case involves the arrest of a young man named Don Terrius Stevens by Officer Mills. The District Court erred in this case when it found that there was no probable cause for the arrest of Don Terrius Stevens for the offense of obstructing governmental operations. The District Court also erred when it found that Juanita Mills was not entitled to qualified immunity on that issue as well. The source of the District Court's error was its focus on the events. In the record, there is a video of this arrest. The source of the District Court's error was its focus on the events in the video when the arrest actually occurred, not when the probable cause for the arrest occurred, which actually occurred a few minutes prior to the time that Officer Mills directed that Don Terrius Stevens be arrested. Counsel, before we go further, I guess my initial question is whether we have jurisdiction in this case. Are you asking us to decide between your version of the facts and the facts that were found by the District Court? Your Honor, I understand that on a qualified immunity appeal that generally factual issues are not taken up at all. However, I believe that the law is that when the District Court is clearly erroneous, that can be decided, as is here, because the central issue is that the District Court's opinion, as both the appellant and the appellee set out in their briefs, it's very short and it's completely focused not on the set of facts in which the probable cause occurred. It's irrelevant. Well, let's talk about those. I think two of the factual findings by the District Court were, one, that Chunky was present, and two, that he did not walk up behind Officer, I'm sorry, your client. Juanita Mills. Mills. Are you disputing those factual findings or what's the distinction? Well, that's an interesting question because I don't dispute that what the District Court described on the video at the moment that Juanita Mills ordered that Donterrio-Stevens be arrested. That's not in dispute, but it's irrelevant. I mean, that is not what caused the probable cause. That was not the actions of Donterrio-Stevens that caused the probable cause. The probable cause was actually several minutes before, and the District Court makes no mention of those facts at all in its analysis. Are you saying that the video footage clearly disputes the District Court's findings? Well, no. I mean, it's an interesting question because the facts as found by the District Court are correct in that that is what is at the moment that Juanita Mills says detained him, I think is her exact words, meaning Donterrio-Stevens. At that moment, he was walking away from Officer Mills. So those facts, I mean, they're correct, but they're not the right set of facts. The right set of facts, in fact, is several minutes prior, and it's on the video partially. There's audio in which you can hear Ms. Stevens as she walks up to her warrant, and she's resisting arrest, and she's calling out for her son repeatedly by his nickname, Chunky. And you can hear Officer Mills at one point say, don't walk up on me like that, Chunky. And in his deposition, Donterrio-Stevens admitted that in response to his mother's calling out for him while she's resisting arrest, he walks up right within a few feet of Officer Mills while she's trying to arrest his mother. And none of that is addressed. And that's not specifically addressed, but it is visible in the video, at least the conversation piece of it, right? That is correct. And if you look at that, don't you run into a Hunt v. Acosta problem? Isn't this just a mere distraction in the arrest? I mean, he did actually interfere in the arrest. He didn't get close enough to be actually visible in the video, right? And so you have a person at some distance approaching, told not to come closer, doesn't do anything. And at that point, it seems like that there's no clear error in any finding that was made because you've got a Hunt v. Acosta problem. I disagree, Your Honor. In Hunt v. Acosta, as this Court knows, the ruling was that a mere distraction was not enough to constitute obstructing governmental operations. I thought that was your argument, that there was a distraction of the officer and that constitutes obstruction of government operations. But there was a clear distinction between those two cases. First, in Hunt v. Acosta, Officer Acosta, his basis for probable cause was that other government workers were distracted from doing their jobs by the disturbance caused by the plaintiff in that case, Mr. Hunt. This Court held that a mere distraction was not enough to constitute obstructing governmental operations. This case is different. In this particular case, Officer Mills was clearly performing her legitimate government duty by arresting Ms. Stevens pursuant to a warrant. While she's resisting, Officer Mills had to stop what she was doing, dealing with Mary Stevens, had to turn and deal with Dontaria Sessions. But does that happen on, you know, this happens every single day on streets all over America. You know, when an arrest is being effectuated and there's a crowd of people or a group of people that's there and somebody says something, an officer turns around and says, stop, stay right there. And those people, you know, is that probable cause every single time that happens? Well, I think that in this particular case, we have enough undisputed facts to say that either one, probable cause actually existed for the offense of obstructing governmental operations or two, Officer Mills should be entitled to qualified immunity. Because in this particular situation, it is not merely that Dontaria was standing feet away and protesting or yelling or doing something that might be merely distracting. But when he took an action, he walked directly up on the scene where his mother, who was not just quietly walking to the car, but she's actively resisting and she's calling out to him. And at that moment, Officer Mills did not know what Dontaria Stevens' intentions were. And she stated in her deposition that she thought, and legitimately based upon the video, that she thought that Dontaria might attack her. Counsel, isn't there a significant legal difference between officer safety concerns, such as get back or stop, and probable cause? Well, I mean, in this particular instance, I think they're inextricably intertwined. Because the whole purpose of, well, one purpose of the statute of obstructing governmental operations, in this instance particularly, Officer Mills was concerned about her safety. And it was that concern about her safety that caused not just a mere distraction for her, but a diversion. A diversion of her attentions from the focus of arresting Miss Stevens, who was resisting and dealing with that, to turn and then have to deal with her son and to deal with him. And so while those issues may in some instances be distinct, I think in this one they're inextricably intertwined. And also, as I mentioned before, although it cannot be seen on the video, Dontaria Stevens admitted in his deposition of walking up within very close proximity of Officer Mills. So I think that is a very important undisputed fact. Additionally, Your Honors, on the issue of qualified immunity, I think that in this particular undisputed factual situation, there is no robust consensus of authority holding that Officer Mills would have known that her actions ran afoul of the Constitution. So certainly she would be entitled to qualified immunity on the basis that under these facts, it was not clearly established that she was violating Dontaria Stevens' rights. The plaintiff undoubtedly will argue that Officer Mills was subjectively motivated, improperly subjectively motivated, to arrest Dontaria Stevens based upon his actions at the moment that Officer Mills directed another officer that he be detained because at that moment it was after Mary Stevens had been successfully finally put in a patrol car and her son came up and was arguing with Officer Mills saying you didn't have to be pushing on her and things like that. But those facts are irrelevant for two reasons. One, there is a well established body of case law that the subjective motivations of the officer are not determinative for the issue of probable cause. An officer's evil or bad subjective motivations don't turn a good arrest into a bad one and vice versa. Likewise, prior to the moment that the probable cause occurred, there had been no such protestations by Dontaria Stevens at all and the district court dismissed his First Amendment claim. That issue, therefore any issue about Officer Mills' subjective motivations at all are completely irrelevant to this claim. And for those reasons, Your Honor, we would ask that the district court's opinion be reversed and this matter be remanded. And I will reserve the rest of my time. Thank you, Counsel. All right, we'll hear from the appellee. All right, you may proceed when you're ready. Good morning, Your Honors. May it please the court, my name is Caleb Bumgardner with Souter and Gillom in Little Rock, Arkansas and I represent Dontaria Stevens in this case. This is a bit of a career milestone for me. This is my first time arguing before the Eighth Circuit, so I'll get right into it. Mr. Wren has already laid out the facts fairly well. There are a few things that I would add. The first thing I want to get into is that Mr. Wren talks about probable cause. And he says that probable cause for the arrest exists because Dontaria walked up on Officer Mills while Officer Mills was arresting his mother. He interfered with that arrest and that, Mr. Wren contends, is the basis for the charge of obstructing government operations. I want to refer the court to the Arkansas statute governing obstructing government operations. That's Arkansas Code Annotated 554-102 parenthetical A in parenthetical, parenthetical 1 in parenthetical. Now there are different circumstances wherein this crime can be committed, but the one cited by the appellant says as follows. It says that someone commits obstructing government operations when a person, quote, knowingly obstructs, impairs, or hinders the performance of any government function, end quote. I respectfully submit to the court that Dontaria Stevens did not knowingly do any of these things. And he didn't do any of these things at all. But even if he did, he didn't know he was doing them. I submit that he committed no crime because he didn't walk up on her with any intention of obstructing the arrest. He just happened to be in the proximity of the arrest. And as the court has already observed, that happens every day all over the country. People observe arrests all the time and they approach police officers all the time. Counsel, was there a factual finding made by the district court as to whether Dontaria walked up on Officer Mills? Your Honor, the court, let me find those notes. Your Honor, the district court made a factual finding. I'm going to read it into the record. The court found as follows. The video of the arrest shows that Dontaria did not approach Officer Mills. He was not hindering Officer Mills or obstructing the arrest. In fact, Dontaria was walking away from Officer Mills when she told another officer to lock him up. Because a reasonable officer on the scene would not have believed that arresting Dontaria under these circumstances was lawful, Officer Mills is not entitled to qualified immunity in this claim. So we're left then with the undisputed facts that he was present in the proximity of the arrest. Yes, Your Honor, that fact is not disputed. He was present. But nearly being present is not a crime. And Mr. Wren points out that Dontaria does admit under oath in his deposition that he did, you know, that he was present. But again, that's not an admission of guilt because that's not a crime. What if the officer reasonably believed that her safety was in danger and someone was going to interfere with the arrest? Hypothetically, if the officer reasonably believed that, then that would be a different scenario. But here, there's no reasonable basis for that belief and that leads into what I was going to say. If you look at the record, page 227, the deposition of Juanita Mills, specifically at lines 22 and 23, she says under oath in her deposition that she doesn't know what Dontaria was about to do. She says that she had no speculation, no knowledge, no nothing, that she didn't know his intentions. And so I don't think the argument that she believed that he was going to attack her holds any water because she says under oath that she didn't know what he was going to do. Both of those things can't be true at the same time. So to the court's question, if the officer reasonably believed that something was about to go down, then yes, they would have probable cause, but that's not what happened here. And Officer Mills even admits that under oath in her deposition. Now the other side cites to an Eighth Circuit decision, Ellers v. City of Rapid City, for their contention that, and I quote, essentially that the duration of obstruction does not take away from the fact that obstruction occurred. That's a very different case than this one. In that case, you had a gentleman named Mr. Ellers who had an encounter with an Officer Hanson. And in that case, Officer Hanson told him to back up. The same thing that happened in the present case. But in that case, in the Ellers case, Mr. Ellers disobeyed the officer. He did the opposite of what he was ordered to do by the officer. He walked toward the officer. And in that case, yes, I would agree that the officer had probable cause to arrest him. And he did arrest him for the South Dakota analog of the Arkansas offense of obstructing government operations. But this case is different because whereas Mr. Ellers disobeyed an officer and kept going when he was told to back up, Dontarius backed up and he complied. Had he not complied, then he would have had proper mens rea to know that he was disobeying the order of an officer, he was interfering with an arrest, and he would have made the decision to do that. But he complied. So none of that applies here. Now getting to the argument that the court makes about Dontarius walking away, I do want to emphasize that. After Officer Mills told Dontarius to walk away, the court will find that she says, Don't walk up on me like that, Chunky. And so in the video, he's kind of standing in the front yard in front of the house. She's on the side of the street putting his mother into the police car. And when she tells him that, he walks back across the yard over near the house. So he's a few yards away. He walks a few yards away from her to the other side of the yard. And then he gets on his phone. He's not even paying attention to her anymore. He's on his phone. I think maybe he's texting. He makes a phone call. I recall from watching the video that he makes a phone call and then I think his father shows up. But at any rate, he's not engaging with her. He's not engaging with any of the other officers. He's not being given orders. He's several yards away from the arrest and the arrest is being carried out. After that, he walks away from the scene of the arrest. He starts walking away on down the street and Officer Mills calls out after him. And it is true that they engage in a verbal exchange there. I believe the appellants call that a verbal altercation. I've seen verbal altercations and I'm sure the court has too. And if the court reviews the video, I think that they will agree that this does not constitute a verbal altercation. And then Don Terrius keeps walking away and then Officer Mills says lock him up too. And then another officer goes down there and arrests Don Terrius and they take him in. The court, the district court I should say, got this right when they found that there was no probable cause because Officer Mills arrested Don Terrius for obstructing government operations when he was actively leaving the scene of an arrest. That demonstrates intent that is the opposite of the criminal intent required to arrest someone for this offense. And there's no other evidence of any crime in the video that she could have arrested him for. And so there's no probable cause for any kind of arrest. For that reason, Don Terrius' Fourth Amendment rights were violated and the court made the finding that that is such and denied her qualified immunity. So let's turn to the second prong then of qualified immunity analysis, which is the clearly established prong. Yes, sir. Do we need a case directly on point or similar to this one that says distracting an officer by merely being present does not constitute probable cause for obstructing governmental operations? Your Honor, my understanding is that you don't have to have a case that's directly on point. You don't have to have a case that is identical to this one. I think that the Ehlers case cited by the other side and we cited in our brief as well is instructive. It shows what obstructing government operations is because it talks about the conduct of Mr. Ehlers and what he did. And the court made the finding that that is obstructing government operations. I think that this case is different. I've already explained why, but to the court's point, another way this is different from the Ehlers case is that not only is Don Terrius present, he's actually becoming less present at the end of the encounter. He's leaving. He's going away and if anything, Officer Mills draws him back into the situation by addressing him and telling him that he's about to get arrested because she threatens him with arrest as he's walking away. So if anything, the state drew him back into that situation and then once he was back there, they decided to arrest him. I want to go back to this knowingly argument that you advanced. And the reason I want to is because I'm not familiar with Arkansas' criminal jury instructions and I'm not familiar with the way that Arkansas instructs on knowingly. And frankly, I haven't focused in on it in my prep, so I didn't study it, so I don't know the answer to it. But I do know that the statute 5-2-202 defines culpable states of mind. And I do know that the culpable state of mind for knowingly is a person acts knowingly with respect to A, the person's conduct or the attendant circumstances. And I think here it's a pure conduct case, so we can kind of ignore attendant circumstances. And then it goes on to say when he is aware that his conduct is of the nature or that the attendant circumstances exist. That's all it says. Now, I think I'm a relatively sophisticated consumer of law, and I'd like to know what in the world do they instruct on that particular definition of knowingly? Because most states have a statutory definition of knowingly that comes from the model penal code, and it's a lot plainer than that one. And so I'm wondering how exactly are Arkansas jurors instructed on that particular state of mind? And I'm just assuming that you do criminal defense work and you know the answer because like every crime is practically knowingly committed. Yes, your honor. As a matter of fact, I have done a great deal of criminal defense work. In addition to being in private practice for nearly a decade, I was also a part-time public defender for four years, and I've tried a whole bunch of criminal jury trials. Having said that, I confess that I have never gotten into the weeds of what knowingly means for the purposes of Arkansas jury instructions. So mostly they just read the statute to them? Is that kind of what happens in instruction? Because that's, I mean, I know there are states where that is, but if I was a juror, I'd like to know what I'm supposed to exactly do with that. Your honor, I agree. If a case turned on that, that would be something that I would want to know if I was on a jury. But the criminal cases that I have tried, they all turned on different facts. And so the emphasis of the jury instructions and the questions that the jurors had that they would send out to the judge, they were always different questions. So here today you're arguing that basically knowingly means that you, like in some states, knowingly simply means that you are aware of the act when you commit it, and you don't necessarily have to know all the consequences. But you're arguing here that knowingly means that on an Arkansas law, you have to know the attendant circumstances, so I shouldn't have written that out of it, and that you act knowingly if you engage in the conduct, so you're aware of the conduct that's going forward, and you're aware of the attendant circumstances, and the likelihood that that would constitute an obstruction. Yes, your honor, I would agree with that analysis. When I was prepping this case, the way that I thought of it is if you're charged with criminal trespass, if somebody sees a piece of land and sees a no trespassing sign, sees a notice that this is private property, or there's a fence, we can assume, and they can assume that they've been given notice that they ain't welcome. If they go over the fence, or if they walk onto the property, they're trespassing. If they just walk onto a piece of property for whatever reason, let's say that they're pulling over to the side of the road because their car broke down, and they're walking onto a piece of ground adjacent to the highway, and somebody runs out and says, hey, this is my property, you're not welcome here. They didn't know they were trespassing until the owner came out and gave them notice, but once they were given notice if they remain upon the property, then they're liable for criminal trespass. I would submit to the court that the circumstances are similar for obstructing government operations. You can't know that you're interfering with an arrest if the police don't even acknowledge your presence. In this case, Don Terrius' presence was acknowledged. He was told to get back, and he did. At that point, he was on notice, and he complied with the officer's instructions. As such, he committed no crime, and I see that with that, my time has expired. And so, I thank the court for its attention, and I ask that it affirm the ruling of the lower court. Alright, hold on just a moment. Did the court have something else? No, I'm good. Okay, you may stand aside then, and we'll hear from the appellate. Thank you, Your Honors. Who has just over four minutes. Your Honor, with regard to the issue of whether or not Don Terrius acted knowingly, I think it's important to there are cases, and I can't cite one, but I know that I've read them that say that matters of state of mind can rarely be determined by officers in the field. And that, you know, obviously you can come up with extreme facts where you might be able to do that. But in this particular situation, there's no reason to think that Don Terrius Stevens didn't know that his mother was calling out his name, he didn't know that she was fighting with Officer Mills, that he didn't know that he walked up within arm's reach of her. And that could also be relevant to arguable probable cause, could it not? It could absolutely be. And in this particular instance, if the case were to turn on whether or not, you know, someone's mental status was the issue, the officer should most assuredly be entitled to qualified immunity if that's the issue. Turning on that same point, was there a reasonable basis to believe that Officer Mills' safety was an issue? Again, that is the point in my brief, in the statement of the case, setting out a lot of facts about Mary Stevens' actions. Because if this were the case, where if Ms. Stevens was merely passively walking with Officer Mills to the car, and her son walks up and says, hey, what's going on? That would be a completely different case. But under these undisputed facts, Officer Mills certainly had a reasonable basis to believe that her safety was an issue from Don Terrius Stevens. Counsel, don't you still run up against the factual findings of the district court that he was present and did not walk up? Well, the problem is the district court focused on the wrong facts. That's really the primary problem. So the issue really for us is that, you know, in context of what Judge Gross has been asking and what your argument and response has been, it seems to me that we have choice A, choice B, if that's the universe in which we're playing. Choice A is that we find that there's a factual dispute and we have no jurisdiction. Choice B is we find that the court didn't determine the necessary facts and remand for further proceedings consistent with it. And the whole issue of qualified immunity is therefore not ripe for us to decide. Am I wrong on that? I think there's a group C there, that the focus of the district court was not on the right facts. But if not on the right facts, shouldn't our answer be to the district court, hey, look at the right facts, buddy. Well, that could be one of the options, Your Honor, that it be remanded for the district court to do that. Well, are the facts that you believe are material, are they disclosed in the video? Well, not visually. I think, well, okay, yes. The short answer is yes. The relevant facts that Officer Mills is fighting with Mary Stevens, which is relevant, that you hear Officer Stevens say to Don Terrius, don't walk up like that on me, chunky. And then also in Don Terrius's deposition, he admits to doing that. So those are the three most material important facts. And they are not in dispute. One last point with regard to Mr. Bumgarner's reference to the case of Ehlers versus Rapid City, that case involved a different statute. In the Arkansas Obstructing Governmental Operations statute does not require that the person be disobedient to the officer. So if that's considered an important fact, legally it is not part of the case, nor is it part of the statute. Thank you. Very well. The case is submitted. Thank you for your argument this morning, counsel. It's been very helpful. And we will render a decision in the case as soon as possible.